# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela Eidson and : 
J.C. Bar Properties, Inc., : 
       Appellants : 
              : 
   v.         :   No. 714 C.D. 2017
              :   Argued:  February 6, 2018
Ross Township Zoning : 
Hearing Board and : 
Township of Ross : 

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**       **FILED:  March 12, 2018**

Pamela Eidson (Eidson) and J.C. Bar Properties, Inc. (Developer) (collectively, Appellants) appeal from an order of the Court of Common Pleas of Allegheny County (Common Pleas), dated May 4, 2017.  Common Pleas affirmed the decision of the Ross Township Zoning Hearing Board (ZHB), which denied Appellants' application for use and dimensional variances (Application).  For the reasons discussed below, we affirm Common Pleas' order.

## I.  BACKGROUND

Eidson is the owner of real property (Property) located at 628 Perry Highway in Ross Township (Township), Allegheny County.  The Property is located at the intersection of Perry Highway and Rochester Road in an R-1 Zoning District,

as defined by Sections 27-902, 27-905, and 27-906 of the Township's Code of Ordinances (Ordinance). In the late 1970s, Nancy DiCola, M.D. (DiCola), Eidson's aunt and the prior owner of the Property, received conditional use approval to construct a 3,000 square foot addition on an existing residence located on the Property for use as a medical office (Medical Office Building). DiCola used the Medical Office Building for both her residence and her medical practice through December 31, 1990, and for her residence until she died in October 2000. From October 2000 through 2007, the Property was vacant and under the control of a court-appointed conservator. In November 2006, DiCola's estate deeded the Property to Eidson. Thereafter, on May 17, 2016, Appellants filed their Application, seeking, *inter alia*: (1) a use variance to permit the construction and operation of a retail CVS pharmacy on the Property, a use that is not permitted in an R-1 Zoning District; and (2) a dimensional variance to reduce the number of required parking spaces from 75 to 50.[1] The ZHB conducted a public hearing on Appellants' Application on August 10, 2016.

At the hearing, Appellants presented the testimony of Jason Mitchell (Mitchell), an employee of Developer. (Reproduced Record (R.R.) at 9a.) Mitchell testified that Developer is CVS's preferred real estate development company in Western Pennsylvania, Central Pennsylvania, and Maryland. (*Id.* at 9a-10a.) Mitchell explained that after Developer identified the Property as a potential CVS location and took the Property through the CVS approval process, Developer met with the Township to discuss the Property's history. (*Id.* at 11a-12a.) At that time,

---

[1] In their Application, Appellants also sought dimensional variances to increase the maximum widths of the Property's entrance and exit driveways. Such dimensional variance requests are not the subject of this appeal, and, therefore, we will not address them in any further detail.

2

Developer learned of a prior attempt to rezone the Property for commercial use. (*Id.*) Through its own research and conversations with the Township, Developer became aware of certain concerns that had been raised during that prior rezoning attempt. (*Id.* at 12a-13a.) Mitchell stated that Developer sought to address those concerns in its initial design of the CVS and with its presentation to the ZHB. (*Id.* at 12a-13a.)

Mitchell testified further that the proposed CVS is a 13,225 square foot building, with a prototypical CVS layout and a single drive-through. (*Id.* at 14a.) It will be accessible from both Perry Highway and Rochester Road, however, the Perry Highway access will be limited to right turns in and right turns out only. (*Id.*) Mitchell explained that Developer has proposed only 50 parking spaces for the CVS because: (1) that is all that is needed; and (2) by reducing the number of parking spaces, Developer is able to add more green space and buffer areas. (*Id.* at 14a-15a.) Mitchell explained further that a typical CVS is open from 8:00 a.m. until 10:00 p.m. and has four to six employees per shift. (*Id.* at 16a.) Mitchell stated that the parking lot will contain LED down-facing lights that will be turned off when the CVS is closed and deliveries to the proposed CVS will be one time per week. (*Id.* at 16a-19a.)

Mitchell also testified that the Property currently contains 3 structures: (1) the main original house that was built in the early 1900s and is currently vacant and boarded up (Original Building); (2) a 2-car garage (Garage); and (3) the Medical Office Building. (*Id.* at 20a-21a.) Mitchell explained that Developer's director of construction inspected the condition of the Medical Office Building to determine whether it could be rehabilitated for future residential use. (*Id.* at 21a.) The inspection revealed that from a mechanical perspective the Medical Office Building is functionally obsolete. (*Id.* at 22a.) Mitchell testified further that the HVAC

3

system and hot water heater are in such a state that they would need to be replaced, the electric system was not working in more than 50 percent of the structure, there had been temporary plumbing installed on the outside of the walls, and the plumbing had been turned off to parts of the structure. (*Id.* at 22a-23a.) The inspection also revealed that from a cosmetic perspective the Medical Office Building would need a complete interior renovation down to the studs. (*Id.* at 23a.) Mitchell stated that Developer had estimated that it would cost approximately $171,000 to perform the mechanical and cosmetic repairs. (*Id.* at 24a.) Mitchell stressed, however, that this estimate did not include any potential structural damage to the Medical Office Building. (*Id.*) The inspection further revealed a potential moisture issue in the Medical Office Building. (*Id.*) As a result, Developer obtained an environmental study, which uncovered the presence of excess moisture and black mold in the Medical Office Building. (*Id.* at 24a-26a.) Mitchell explained that in its existing poor condition, the Property appraised at $135,000. (*Id.* at 26a-27a.) Mitchell testified, however, that he did not believe that the Property could be used without demolishing the existing structures. (*Id.* at 27a.)

Appellants also presented the testimony of Andrew Schwartz (Schwartz), the managing principal and lead landscape architect/community planner for Environmental Planning and Design. (*Id.* at 32a-33a.) Appellants' attorneys hired Schwartz to render an expert opinion regarding the appropriateness of the requested use and dimensional variances for the construction of a CVS on the Property. (*Id.* at 35a, 397a.) Schwartz testified that the assessor's office labeled the Original Building as unsound, which basically means that it needs to be demolished. (*Id.* at 37a.) Schwartz explained that in addition to the structures, the Property also

4

contains a 20-25 car parking lot, a commercial grade driveway, and commercial grade lighting. (*Id.* at 37a-38a.)

Schwartz explained that the development character of Perry Highway and Rochester Road has changed significantly over the years from large residential and agricultural uses to commercial uses due to the increase in vehicular traffic. (*Id.* at 41a-44a, 47a-48a.) Schwartz indicated that in its 1995 Strategic Plan, the Township even referred to Perry Highway as a "primary commerce corridor." (*Id.* at 44a, 47a-48a.) Schwartz explained that around that time people were beginning to recognize this area as mixed-use and not just residential neighborhoods. (*Id.* at 48a-49a.) Schwartz also indicated that the Township passed multiple zoning amendments from 1930 through the present, which included approximately 114 changes of use from residential to commercial. (*Id.* at 45a.) Schwartz described these zoning amendments as a piecemeal, reactive approach, where the Township changed the zoning for a particular parcel or parcels based on a proposal without any analysis to support the amendment. (*Id.* at 45a-47a.) Schwartz also explained that the Township's 2015 Comprehensive Plan further reinforced that the zoning in this area "should be oriented more towards mixed[-]use types of districts that have more flexibility." (*Id.* at 52a.)

Schwartz also testified that he identified four hardships affecting the Property that are sufficient to justify the grant of a use and dimensional variances. (*Id.* at 53a, 68a, 74a.) Schwartz stated that the first hardship is the "patchwork" of non-residential, commercial, and industrial uses surrounding the Property. (*Id.* at 53a.) Schwartz stated further that the Property, which is zoned single-family residential, is "kind of like frozen in time[, where e]verything around it has slowly changed over time." (*Id.* at 53a-54a.) Schwartz also stated that within ¾ of a mile

5

of the Property, there are approximately 96 non-residential, commercial, and industrial uses, including "anything from auto repair, auto body, to dentist office, attorney's offices, restaurants[,]" and a school campus. (*Id.* at 39a-40a, 53a-56a.) Schwartz admitted, however, that he did not identify which of those uses were located in the Township and which of those uses were located within West View, a neighboring municipality. (*Id.* at 40a.)

Schwartz testified that the second hardship is the intersection of Perry Highway and Rochester Road. (*Id.* at 57a.) Schwartz explained that the current traffic volume at the intersection of Perry Highway and Rochester Road is a little less than 22,000 vehicles, with approximately 14,300 vehicles on Perry Highway and approximately 7,500 vehicles on Rochester Road. (*Id.* at 39a.) Schwartz explained further that "22,000 cars at an intersection in a single-family residential area is an extreme number." (*Id.* at 58a-59a.) When asked whether these types of traffic counts are typical in an R-1 Zoning District, Schwartz stated: "If we were kind of reworking the zoning map and the fixed point was an intersection of 22,000 cars, low-density residential would not be at that corner. That's not a contemporary zoning practice. It doesn't follow the general rules of real estate." (*Id.* at 66a.)

Schwartz stated that the third hardship is the Property's nonconforming use as a medical office. (*Id.* at 67a.) Schwartz explained that the Medical Office Building was "a purpose-built commercial building" and converting it back to residential use will be a hardship. (*Id.* at 68a.)

Schwartz identified the fourth hardship as the Property's size. (*Id.* at 67a.) Schwartz explained that Eidson has attempted to sell the Property for residential purposes for years, but has been unsuccessful. (*Id.* at 64a.) Schwartz

6

opined that the Property is tough to sell because the Property is larger than what people are looking at in today's market for a single-family lot and is located on an intersection with 22,000 vehicles, and the Property is too small to subdivide into more than 3 single-family homes. (*Id.* at 64a-66a.) Schwartz also explained that the Property is unique due to its size and the fact that it has 2 access driveways. (*Id.* at 67a.)

Appellants also presented the testimony of Charles Wooster (Wooster), a traffic engineer and the owner of David E. Wooster & Associates, Inc. (*Id.* at 75a-76a.) Wooster performed a traffic assessment in connection with Appellants' Application. (*Id.* at 76a.) The traffic assessment evaluated both the intersection of Perry Highway and Rochester Road and the access driveways to the proposed CVS (full access on Rochester Road and right turn in/out on Perry Highway). (*Id.* at 78a.) Wooster testified that the average daily traffic at the subject intersection is a little over 14,000 vehicles per day on Perry Highway and approximately 7,500 vehicles per day on Rochester Road. (*Id.* at 78a-79a.) Wooster explained that the traffic is multi-municipality, not just local to the Township. (*Id.* at 79a.) When asked whether this is a typical intersection you would see in a single-family residential area, Wooster stated that people usually want to live on local roads. (*Id.*) Perry Highway and Rochester Road are arterial highways, not local roads. (*Id.*)

Based on his traffic assessment, Wooster opined that the proposed CVS would not have any significant impact on the subject intersection. (*Id.* at 79a-80a, 94a.) Wooster explained that he generated the anticipated traffic to the proposed CVS consistent with traffic engineering industry standards, calculated the capacity and level of service both pre-development and post-development, and,

7

based on the difference between the two, determined that the greatest impact to the subject intersection would be a 1.2-second delay. (*Id.* at 80a-81a.) Wooster stated that the proposed CVS will require highway occupancy permits because Perry Highway and Rochester Road are both state-owned highways. (*Id.* at 81a.) Wooster stated further that he has no doubt that the Pennsylvania Department of Transportation will issue the highway occupancy permits without the need for any traffic mitigation because the proposed CVS will not have any significant impact on traffic conditions. (*Id.* at 81a-82a.)

Appellants also presented the testimony of Eidson. Eidson testified that at the time that she became the owner of the Property in November 2006, the Original Building was already boarded up. (*Id.* at 97a-98a.) Eidson testified further that her aunt used the Medical Office Building for her medical practice from approximately 1980 through December 1990. (*Id.* at 98a-99a.) Eidson also testified that her aunt continued to reside in the Medical Office Building until she died in October of 2000. (*Id.* at 99a.) Thereafter, the Property passed through a life estate and was under the control of a court-appointed conservator until November 2006, when Eidson took ownership. (*Id.*) Eidson explained that during that approximately 7-year period, the Property was vacant. (*Id.*) Eidson described the Property as "devastation" at the time that she took ownership. (*Id.* at 100a.) Eidson stated that the condition of the Property was worse when she acquired it, because she has tried to make it better. (*Id.*)

Eidson testified further that she listed the Property for residential sale in the spring of 2007. (*Id.* at 100a, 105a.) She explained that the Property has been on the market consistently since that time except for a period of about 2 years when she was between real estate agents. (*Id.* at 101a.) Eidson explained further that the

8

asking price for the Property has always been $2.5 million at the recommendation of a real estate agent. (*Id.* at 103a-04a.) Eidson also testified that she has not received any legitimate written offers for the purchase of the Property, and that the only offers that she has received have been commercial in nature. (*Id.* at 102a.) Eidson indicated that she has resided in the residence portion of the Medical Office Building since March 2011. (*Id.* at 103a.) She described the medical office portion of the Medical Office Building as "unusable." (*Id.*) When asked whether the Property's deterioration was caused by vandalism, Eidson stated: "It was a combination. There were a couple break-ins, and pipes froze. And just not upkeep. Negligence." (*Id.* at 104a-05a.) Eidson agreed that the highest percentage of the damage resulted from a failure to maintain the Property but indicated that it was not "under her watch." (*Id.* at 105a.)

Appellants also presented the testimony of Mike Netzel (Netzel), a realtor licensed with Keller Williams Realty. (*Id.* at 108a.) Netzel testified that in his opinion the Property is not marketable for single-family residential use. (*Id.* at 109a.) Netzel testified further that the $135,000 appraised value is not representative of what the Property is worth as a residential property. (*Id.*) He explained: "Appraisers are very handcuffed today by the federal government with the economic collapse related to my industry. They really put tight constraints on what an appraiser can and cannot do. They have to go off sale data, proximity; and the comparable sales aren't comparable." (*Id.* at 109a-10a.) Netzel agreed that the commercial nature of the intersection of Perry Highway and Rochester Road affects the marketability of the Property for residential purposes. (*Id.* at 110a.) He stated that the Property presents an inherent contradiction because people who are looking for a residential 1-acre lot are interested in privacy and no matter how far back you

9

build the house, the Property is still located in a heavily congested area. (*Id.* at 111a.)

Netzel testified further that he reviewed other residential properties located within a 1-block radius of the Property and the subject intersection that also deal with the traffic issue. (*Id.* at 111a-14a.) Netzel agreed that all of these properties are in better condition than the Property. (*Id.* at 116a.) Netzel suggested that at least some of these properties sat on the market for an extended period and then sold for less than asking price or were resold some years later for less than the purchase price—*i.e.*, 742 Perry Highway sat on the market for almost 3 years and sold for $100,000 less than asking price and a Tudor home located in Wellington Heights sold for $267,000 in 2009 and $226,000 in 2013. (*Id.* at 112a-14a.) Netzel explained that traffic matters and "a home on a busy road is just not where people are looking to be." (*Id.* at 131a.)

When asked what the value of the Property would be if the buildings were in immaculate condition, Netzel indicated about $250,000. (*Id.* at 118a-21a.) Netzel explained, however, that one of the buildings on the Property cannot be rehabbed and must be knocked down and the Property has "functional obsolescence out the wazoo." (*Id.* at 119a-21a.) Netzel also indicated that without anything on the Property, he did not believe it was even worth $100,000. (*Id.* at 122a.) Netzel believed that the Property would without a doubt be worth more if it was zoned commercial and not residential. (*Id.* at 123a.) Netzel also indicated that there is no chance of obtaining a mortgage on the Property for residential purposes. (*Id.* at 125a-26a.) Netzel indicated further that none of the cash investors that he works with would touch the Property for residential purposes. (*Id.* at 130a.) He also stated that as far as rehabbing the Property, the floor plan of the Medical Office

10

Building is "weird" for the residential marketplace, and you would not be able to obtain financing to perform any rehab. (*Id.* at 130a-31a.) Netzel, therefore, believed that the only value and potential future use of the Property would require the buildings to be demolished. (*Id.* at 131a.)[2]

On August 26, 2016, the ZHB rendered its decision, denying Appellants' Application. Sometime thereafter, the ZHB issued findings of fact and conclusions of law in support of its decision, wherein the ZHB made the following relevant conclusions of law:[3]

> 44. Section 27-905 of the [Ordinance] sets forth the uses that are permitted in the Township's R-1 [Zoning] District. Pursuant to Section 27-905 of the [Ordinance,] "retail stores" are not permitted in an R-1 [Zoning] District.

> 45. Pursuant to Section 27-905 [of the Ordinance], the following uses are permitted in the R-1 [Zoning] District: Single-Family Detached[,] Residential Day Care Facility[,] Group Home[,] Forestry/Logging[,] No Impact Home Business[,] and Residential Accessory Structure. Permitted by Conditional Use include: [Planned Residential Development (PRD)], Place of Worship, School, Day Care Facility, Public Recreational Facility, Private Recreational Facility, Golf Course, Emergency and Municipal Facility, Home Occupation, Accessory Office, and Temporary Structure. Permitted by Special Exception are: Public Utility Building and Storage Yard,

---

[2] The Board also heard statements from members of the public in opposition to Appellants' Application and the proposed commercial development of the Property. (R.R. at 134a-56a.)

[3] Although not dated, it appears that the ZHB issued its findings of fact and conclusions of law after Appellants filed their appeal with Common Pleas. All further references and citations to the ZHB's decision shall be considered to be references to the ZHB's findings of fact and conclusions of law.

11

Windmill, Parabolic or Satellite Dish Antennas, and Wireless Communications Antennas or Towers.

46. The [Property] is in an R-1 Zoning District in the [Township].

47. The proposed use is a 13,225 square foot building with 50 proposed parking spaces, to be accessible from Rochester Road and Perry Highway, and is not permitted in the Township's R-1 Zoning District as "Retail Stores" are not permitted in the R-1 [Zoning] District under Section 27-905 of the [Ordinance].

. . . .

51. Regarding the first hardship alleged by [Appellants], the ZHB concludes that the [Property] is not surrounded by dissimilar and incompatible commercial, institutional, and industrial uses, due to alleged rezoning of individual parcels and use variances, and does not create a substantial hardship for residential reuse of the site, and states:

    a. [The Township's] first comprehensive plan was adopted in 1971, which was followed by a strategic plan implemented by the Township in 1995;

    b. Despite the 1995 strategic plan of [the Township], in 2011, [the Township] Board of Commissioners denied Eidson's request to rezone the [Property] from R-1 to C-3, by a vote of 0-9;

    c. In 2015, [the Township] through its Board of Commissioners adopted a new comprehensive plan; and,

    d. Before the ZHB, [Appellants] argued that the use of the [Property] as a CVS store would be consistent with the Township's Comprehensive Plan for pedestrian connection between neighborhoods and commercial districts, but [Appellants] have not

12

filed an application for rezoning of the [Property] to the Board of Commissioners, based upon that Comprehensive Plan.

52. [Appellants] also claimed a second hardship, that the Perry Highway and Rochester Road is a major regional intersection that has created a *de facto* mixed commercial and residential use zoning district, that is not conducive to single[-]family residential use. The ZHB rejected this claim for the following reasons:

    a. Section 27-905 and Section 27-906 [of the Ordinance] provide many permitted uses in the R-1 [Zoning] District and [Appellants] did not provide sufficient evidence that the [Property] could not be used for a use permitted in the R-1 [Zoning] District, . . . including, *but not limited to*: Single-Family Detached or Residential Day Care Facility, or Group Home;

    b. The testimony and evidence presented revealed that Eidson has never attempted to sell the [Property] for a residential use;

    c. The testimony and evidence presented demonstrated that Eidson's asking price for the [Property] has always been $2.5 [million]; and,

    d. Evidence and testimony presented revealed that Eidson has used the [Property] for residential purposes, as her residence since 2011, a use permitted in Section 27-905 of the [Ordinance].

53. The ZHB rejected [Appellants'] clam [sic] of a third hardship, that the physical conditions of the buildings on the [Property] constitute substantial hardship, and provide the following reasons:

13

a. The presence of the parking lot on the [Property] and the commercial lighting fixtures lining the main driveway and parking lot do not limit the [P]roperty to use as a retail pharmacy;

b. The evidence and testimony presented revealed that the current deplorable condition of the [Property] is due to Eidson's failure to maintain and preserve the buildings on the [Property];

c. The Allegheny County assessed value of the [Property] has continued to increase despite its "unsound condition;" and,

d. The evidence and testimony reveals that Eidson has been living at the [Property] since 2011, and has made no effort to use or maintain the [Property] as a medical office.

54. The ZHB rejected [Appellants'] fourth claim that the size of the [Property] creates a unique hardship warranting the grant of a use variance as [Appellants] did not provide sufficient evidence that the [Property] could not be used as another use permitted in an R-1 [Zoning] District under Section 27-905 [of the Ordinance], other than a single-family residence.

55. Before the ZHB, [Appellants] argued that the development of a CVS Pharmacy allows for badly-needed and highly-desired sidewalk construction to take place at and around an intersection that they opine is heavily travelled and is not conducive to residential use.

56. The ZHB concludes that a CVS Pharmacy, a building of 13,225 square foot [sic] with 50 proposed parking spaces, is not tantamount to a neighborhood pharmacy that pedestrians from the neighborhood could walk to and from, and would change the character of the neighborhood.

14

57.     Finally, if a variance would otherwise be warranted, a CVS Pharmacy in a[n] R-1 [Zoning] District does not represent the least modification of the R-1 [Zoning] District regulation at issue.

(ZHB Decision at 5-8 (emphasis in original).)   Appellants appealed the ZHB's decision to Common Pleas.  By order dated May 4, 2017, Common Pleas affirmed the ZHB's decision.  Appellants then appealed to this Court.

## II.  ISSUES ON APPEAL

On appeal,[4] Appellants have raised seven issues for our consideration. For purposes of discussion and disposition, we have condensed the cognizable issues as follows:  (1) whether the ZHB abused its discretion and/or committed an error of law by concluding that there was no unnecessary hardship associated with the use of the Property for residential purposes; (2) whether the ZHB abused its discretion and committed an error of law by concluding that Eidson created any unnecessary hardships that may exist with respect to the residential use of the Property; (3) whether the ZHB abused its discretion and/or committed an error of law by concluding that the use variance will not alter the essential character of the neighborhood or be detrimental to the public interest; and (4) whether the ZHB abused its discretion or committed an error of law by denying Appellants' request for dimensional variances to reduce the number of required parking spaces.

## III.  DISCUSSION

First, we address Appellants' argument that the ZHB abused its discretion and/or committed an error of law by concluding that there was no

_____

[4] "Where a trial court takes no additional evidence in an appeal from a decision of the [ZHB], this Court is limited to considering whether the [ZHB] erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). "A [ZHB] abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth.), *appeal denied*, 934 A.2d 75 (Pa. 2007).

15

unnecessary hardship associated with the use of the Property for residential purposes. More specifically, Appellants argue that the substantial evidence of record demonstrates the existence of 4 unnecessary hardships associated with the residential use of the Property: (1) the Property is located in an area that the Township previously designated a "Primary Commerce Corridor" and is surrounded by a "patchwork" of dissimilar and incompatible commercial and non-single-family residential uses; (2) the Property is located at an intersection that is not conducive to single-family residential use; (3) the Property's commercial history and the current condition of the Original Building, the Garage, and the Medical Office Building; and (4) the Property's physical features and size.

"It is well-established that substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Adams Outdoor Adver., Ltd. v. Dep't of Transp.,* 860 A.2d 600, 605 n.8 (Pa. Cmwlth. 2004), *appeal denied*, 887 A.2d 1242 (Pa. 2005). "When performing a substantial evidence analysis, this Court must review the evidence in a light most favorable to the party who prevailed before the fact finder." *Id.* This Court "may not substitute its interpretation of the evidence for that of the [ZHB]." *Vanguard Cellular Sys., Inc. v. Zoning Hearing Bd. of Smithfield Twp.*, 568 A.2d 703, 707 (Pa. Cmwlth. 1989), *appeal denied*, 590 A.2d 760 (Pa. 1990). Assuming the record contains substantial evidence, we are bound by the ZHB's findings that result from "resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence." *Id.* The ZHB, as the fact-finder, is free to reject even uncontradicted testimony it finds lacking in credibility. *Id.*

A variance is a departure from the exact provisions of a zoning ordinance. *Brennen v. Zoning Bd. of Adjustment of the City of Connellsville*,

16

187 A.2d 180, 182 (Pa. 1963). Pursuant to Section 27-605(1) of the Ordinance, the ZHB may grant a variance if it finds that all of the following conditions exist, where relevant:

A. That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located[;]

B. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property[;]

C. That such unnecessary hardship has not been created by the applicant[;]

D. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare[; and]

E. That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

With respect to the Ordinance's first requirement for a variance—*i.e.*, unique physical circumstances or conditions of the subject property constituting an unnecessary hardship—this Court has explained:

Whether an applicant is seeking a use or a dimensional variance, the applicant must, at a minimum, demonstrate that an unnecessary hardship will result if a variance is

17

denied and that the proposed use will not be contrary to the public interest. In the context of a use variance, an applicant must establish that an unnecessary hardship attends the land with evidence that: (a) the physical conditions of the property are such that it cannot be used for a permitted purpose; or (b) the property can be conformed for a permitted use only at a prohibitive expense; or (c) the property is valueless for any purpose permitted by the zoning ordinance. While an unnecessary hardship can be established by demonstrating that the hardship falls squarely within one of these three categories, in practice the evidence presented often does not fit neatly in one category or another but overlaps. When evaluating an unnecessary hardship, use of adjacent and surrounding land is relevant. Once an applicant has demonstrated that the property is subject to an unnecessary hardship, the party must also demonstrate that the conditions are unique to the property; where the hardship is present in the district as a whole or in a portion of the district, the proper remedy is re-zoning rather than a variance.

*Nowicki v. Zoning Hearing Bd. of the Borough of Monaca*, 91 A.3d 287, 292 (Pa. Cmwlth. 2014) (citations omitted).

With respect to their first allegation of unnecessary hardship, Appellants argue that they presented substantial evidence to the ZHB that establishes that any residential use of the Property is impractical because "there are nearly 120 non[-]residential uses within a ¾ mile radius of the Property." (Appellants' Br. at 44-45.) Appellants argue further that the Township's history of spot zoning and granting of use variances "has created a *de facto* mixed commercial and residential use zoning district" where the Property is located. (Appellants' Br. at 43.) In response, the ZHB argues that Appellants failed to establish that the area surrounding the Property is a *de facto* mixed-use zoning district that contains dissimilar and incompatible commercial, institutional, and industrial uses or that any such *de facto* mixed-use zoning district created a substantial hardship for the

18

residential use of the Property. The ZHB argues further that it properly rejected Schwartz's testimony regarding the creation of a mixed-use zoning district because: (1) while Schwartz provided a list of several non-residential uses surrounding the Property, he did not provide a similar list for residential uses; and (2) Schwartz did not identify which of the surrounding non-residential uses were located in the Township and which were located in West View, a neighboring municipality.[5]

The ZHB's conclusion that Appellants failed to demonstrate that the area surrounding the Property is a *de facto* mixed-use zoning district that contains dissimilar and incompatible commercial, institutional, and industrial uses or that any such *de facto* mixed-use zoning district has created a substantial hardship for the residential use of the Property is supported by substantial evidence of record. Schwartz testified that within ¾ of a mile of the Property, there are approximately 96 non-residential, commercial, and industrial uses. (R.R. at 39a-40a.) Schwartz admitted, however, that he did not identify which of those uses were located within the Township and which of those uses were located within the neighboring municipality of West View. (*Id.* at 40a.) In addition, it appears that in his analysis of the surrounding uses, Schwartz ignored the residential uses surrounding the Property, as there are no residential uses identified in Appendix 2 of his report. (*See id.* at 410a-11a.) Thus, Appellants failed to present a clear picture of the Property's surrounding uses so that the ZHB could effectively

---

[5] In its brief, the ZHB indicates that Appellants offered testimony relative to the Township's 1995 Strategic Plan and 2015 Comprehensive Plan and a 2011 attempt to rezone the Property in support of their first allegation of unnecessary hardship. In their reply brief, Appellants essentially respond that Schwartz's testimony on these matters was for background purposes only and that by highlighting these facts, the ZHB is attempting to deflect the Court's attention from the actual bases for their first allegation of hardship. We do not believe that a discussion of these matters is necessary to dispose of Appellants' arguments on appeal, and, therefore, we will not address these arguments in any further detail.

19

consider whether the Property is located within a *de facto* mixed-use zoning district. Furthermore, even if the Property is located within a *de facto* mixed-use zoning district, Appellants have not shown how the Property's location in such a *de facto* mixed-use zoning district creates an unnecessary hardship that is unique to the Property and separate and distinct from any hardship to other residential properties located within the same *de facto* mixed-use zoning district. Under those circumstances, all residential properties will be subject to the same hardships. For these reasons, we conclude that the ZHB did not abuse its discretion or commit an error of law by rejecting Appellants' first allegation of hardship.

With respect to their second allegation of unnecessary hardship, Appellants argue that they presented substantial evidence to the ZHB that establishes that the intersection upon which the Property is located is not conducive to single-family residential use due to high traffic volumes and the arterial character of Perry Highway and Rochester Road. Appellants argue further that "with a volume of 22,000 daily trips and 12 turning lanes of traffic[,] . . . the [s]ubject [i]ntersection . . . has been effectively rendered obsolete for its original residential use." (Appellants' Br. at 45.) Appellants also argue that the hardship created by the subject intersection is unique to the Property because it is the only property located within an R-1 Zoning District that contains driveways accessible by both Perry Highway and Rochester Road. In response, the ZHB argues that Appellants failed to establish that the subject intersection "is a major regional intersection that is not conducive to single[-]family residential use" or that the subject intersection created a substantial hardship for the residential use of the Property. (ZHB's Br. at 21.)

The ZHB's conclusion that Appellants failed to demonstrate that the intersection of Perry Highway and Rochester Road is not conducive to single-family

residential use and, therefore, has not created an unnecessary hardship is supported by substantial evidence of record. Schwartz testified that 22,000 vehicles at an intersection in a single-family residential area "is an extreme number." (R.R. at 58a-59a.) Schwartz also testified that if the zoning map was reworked, he would not recommend low-density residential at the subject intersection. (*Id.* at 66a.) Similarly, Wooster explained that people want to live on local roads, not arterial highways like Perry Highway and Rochester Road. (*Id.* at 79a.) Likewise, Netzel stated that the commercial nature of the subject intersection affects the marketability of the Property. (*Id.* at 110a.) Appellants did not, however, present any evidence or testimony that because of the subject intersection there is no possibility that the Property can be developed for residential purposes or for any other purpose permitted in an R-1 Zoning District—*i.e.*, Appellants' witnesses appear to have stopped short of this conclusion. Furthermore, while Pennsylvania courts have "upheld the grant of a variance where no evidence of an attempt to sell the property was submitted . . . evidence of the owners' inability to sell his property has unquestionable probative value." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 642 (Pa. 1983). The ZHB noted, however, that Eidson did not establish that she attempted to sell the Property for residential purposes; rather, she only established that she attempted to sell the Property for an inflated price tag of $2.5 million. Thus, the ZHB gave no weight to Eidson's "effort" to sell the Property.

In addition, Appellants have not established how the intersection of Perry Highway and Rochester Road creates an unnecessary hardship that is unique to the Property and separate and distinct from any hardship to other residential properties located at or around such intersection. Contrary to Appellants'

21

allegations, the fact that the Property has driveways accessible by both Perry Highway and Rochester Road does not necessarily make the hardship unique to the Property. Arguably, having a second driveway access to Rochester Road could put the Property in a better position than other residential properties located on Perry Highway. For these reasons, we conclude that the ZHB did not abuse its discretion or commit an error of law by rejecting Appellants' second allegation of hardship.

With respect to their third allegation of unnecessary hardship, Appellants argue that they presented substantial evidence to the ZHB that the Property is practically valueless for residential purposes and that any future use of the Property will require demolition of the existing structures due to the unsound condition of the Original Building and the Garage and the uninhabitable condition of the Medical Office Building. Appellants argue further that the non-conforming commercial nature of the Medical Office Building and the existence of the commercial grade parking lot and the commercial lighting fixtures in and of themselves create a substantial hardship for the residential use of the Property. In response, the ZHB argues that Appellants failed to establish that the physical condition of the Property created a substantial hardship for the residential use of the Property. The ZHB argues further that the record does not support a conclusion that the presence of the commercial grade parking lot and the commercial lighting fixtures prevent the Property from being used for a permitted use—*i.e.*, a group home, a residential care facility, or multiple single-family dwellings. The ZHB also argues that the record does not demonstrate that the Property would be almost valueless without the grant of a use variance or that developmental costs rendered the Property impractical for any residential use.

The ZHB's conclusion that Appellants failed to demonstrate that the physical condition of the Property constitutes a substantial hardship for the residential use of the Property is supported by substantial evidence of record. Mitchell testified that he did not believe that the Property could be used without demolishing the existing structures. (R.R. at 27a.) Schwartz testified that the Medical Office Building, which the Court notes is attached to the residence in which Eidson resides on the Property, was "a purpose-built commercial building" and converting it to residential use would be a hardship. (*Id.* at 68a.) Netzel testified that the buildings on the Property would need to be demolished for the Property to have value. (*Id.* at 131a.) Although the ZHB did not set forth its credibility determinations in writing, we can infer that the ZHB did not find Mitchell's, Schwartz's, and Netzel's testimony in this regard to be credible. Rather, it appears that the ZHB relied on the fact that DiCola used the Property solely as her residence from December 31, 1990 through October 2000 and Eidson has been living at the Property since 2011, as a basis to conclude that the physical condition of the Property and the commercial purpose of the Medical Office Building do not preclude the Property's use for residential purposes.[6] The ZHB also appears to rely on the fact that Appellants did not consider other potential permitted uses for the Property. While we acknowledge that "an applicant for a variance for a legally non-conforming property [need not] eliminate every possible permitted use[,]" it does not appear from the record that Appellants considered any permitted use other than single-family residential. *Marshall v. City of Phila.*, 97 A.3d 323, 332

_____

[6] Appellants suggest that "the ZHB's finding that no hardship exists because [Eidson] currently resides at the [Property] is tantamount to a death sentence[,]" because Eidson is of very limited means and lives in the residential portion of the Medical Office Building out of necessity. (Appellants' Br. at 48.) Appellants, however, have not identified where in the record these facts can be found. Thus, we will not consider such facts for the purposes of this appeal.

23

(Pa. 2014). This evidence and testimony supports the ZHB's conclusion that Appellants failed to demonstrate that the physical condition of the Property constitutes a substantial hardship for the residential use of the Property. For these reasons, we conclude that the ZHB did not abuse its discretion or commit an error of law by rejecting Appellants' third allegation of hardship.

With respect to their fourth allegation of unnecessary hardship, Appellants argue that they presented substantial evidence to the ZHB that the Property is "too large to attract interest from potential buyers who are looking to construct a single-family home" and "too small to attract interest from modern-day home developers, who seek significantly (and increasingly) larger acreages of land to subdivide and develop." (Appellants' Br. at 52.) Appellants argue further that it was improper for the ZHB to reject the Property's size as a hardship on the basis that the Property could potentially be used for another permitted use. In response, the ZHB argues that Appellants failed to establish that the Property's size created a substantial hardship for the residential use of the Property because: (1) Appellants did not provide evidence that the Property could not be used for another permitted use; and (2) an aerial photo of the area demonstrated that the size of the Property is consistent with surrounding properties that are being used for residential purposes.

The ZHB's conclusion that Appellants failed to demonstrate that the Property's size created a substantial hardship preventing the residential use of the Property is supported by substantial evidence of record. Schwartz testified that the Property is difficult to sell for residential purposes because it is larger than what people are looking for in a single-family residential lot and it is too small to subdivide into more than 3 single-family lots. (R.R. at 64a-66a.) Again, while the ZHB did not set forth its credibility determinations in writing, it can be inferred that

24

the ZHB rejected Schwartz's testimony in this regard. In addition, Common Pleas noted that "[a]n aerial view of the area shows that the size of the Property is consistent with the surrounding properties and other lots are used for residential purposes[,]" thus establishing that the Property's size does not create a unique hardship that is separate and distinct from other neighboring residential properties. (Common Pleas' Op. at 5; *see also* Supplemental Reproduced Record (Supp. R.R.) at 1b.) As a result, we conclude that the ZHB did not abuse its discretion or commit an error of law by rejecting Appellants' fourth allegation of hardship.

For all of the reasons set forth above, we conclude that the ZHB did not abuse its discretion or commit an error of law by concluding that there was no unnecessary hardship associated with the use of the Property for residential purposes.[7] Because the ZHB did not abuse its discretion or commit an error of law in this regard, Common Pleas did not err in affirming the ZHB's decision and order.

## IV. CONCLUSION

Accordingly, we affirm Common Pleas' order.

_____
P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[7] Given our disposition above, we need not address Appellants' remaining arguments on appeal, because, without establishing an unnecessary hardship, Appellants cannot obtain the requested use and dimensional variances.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela Eidson and : 
J.C. Bar Properties, Inc., : 
                  Appellants : 
             : 
         v. : No. 714 C.D. 2017
             : 
Ross Township Zoning : 
Hearing Board and : 
Township of Ross : 

## **O R D E R**

AND NOW, this 12th day of March, 2018, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

 

                                            

P. KEVIN BROBSON, Judge